IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL LOUNSBURY,                                       Civil No. 99-1135-CO

        Petitioner,                                      FINDINGS AND RECOMMENDATION

    v.

S. FRANK THOMPSON, Superintendent,
Oregon State Penitentiary,

        Respondent.

COONEY, Magistrate Judge:

    This matter was reversed and remanded by the Ninth Circuit to give this Court the opportunity to decide "whether the state court denied Lounsbury due process in finding him competent to stand trial." Lounsbury v. Thompson, 374 F.3d 785, 790 (9th Cir. 2004).

## I. DISCUSSION

    As to petitioner's claim that he was denied substantive due process because he was tried when he was not mentally competent, respondent argues that the trial court's ruling that petitioner was able to understand the nature of the proceedings and to aid and assist was not contrary to, or an unreasonable application of, United States Supreme Court law, and is entitled to deference under 28

Findings and Recommendation - 1

U.S.C. § 2254(d). Respondent further contends that the court's factual determinations of credibility are entitled to deference under 28 U.S.C. § 2254(e)(1). Petitioner argues that the trial court failed to heed the informed opinions of the two experienced physicians who examined him–Dr. Colbach and Dr. Goldman– and the observations of his lawyers, which established that it was more likely than not that he was incompetent to proceed to trial, and the trial court erred in finding him competent. Respondent replies that the trial court's determination the petitioner was able to aid and assist is entitled to deference and was not clearly erroneous

The Antiterrorism and Effective Death Penalty Act (AEDPA), which revised the standards of deference federal courts must accord state court decisions, provides in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d). Further, any factual determinations made by the state courts are presumed to be correct. Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

Under section 2254(d)(1), a state prisoner may obtain federal habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the state court's ruling was either (1) contrary to clearly established federal law, as determined by the Supreme Court of the United States, or (2) involved an unreasonable application of clearly established federal law, as determined

by the Supreme Court of the United States.  Williams v. Taylor, 529 U.S. 362, 404-05 (2000); Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2004).  These clauses have independent meanings, but in some cases they may overlap.  Williams, 529 U.S. at 408; Van Tran v. Lindsey, 212 F.3d 1143, 1150 (9th Cir. 2000), overruled on another ground by Lockyer v. Andrade, 538 U.S. 63 (2003).

"The threshold question under AEDPA is whether [petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final."  Williams, 529 U.S. at 390.  When determining what the clearly established federal law is, federal courts look at the holdings of the United States Supreme Court as of the time of the state court's decision.  Id. at 412.  Ninth Circuit law may still be considered "for its persuasive authority in applying Supreme Court law."  Van Tran, 212 F.3d at 1154; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.), cert. denied, ___ U.S. ___, 124 S. Ct. 446 (2003).

A state court's decision is "contrary to" clearly established Supreme Court precedent if 1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or 2) the state court "confronts a set of facts that are materially indistinguishable" from a Supreme Court case, but still reaches a different result.  Williams, 529 U.S. at 405-06, 412-13; Lockyer v. Andrade, 538 U.S. 63, 73 (2003); Clark, 331 F.3d at 1067.  A state court's ruling is "contrary to" Supreme Court precedent if it is diametrically different, opposite in character or nature, or mutually opposed to, a Supreme Court holding.  Williams, 529 U.S. at 405.

A state court decision involves an "unreasonable application" of Supreme Court precedent if 1) the state court identifies the correct governing rule, but then applies it to a new set of facts in an unreasonable way, or 2) the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to

Findings and Recommendation - 3

extend that principle to a new context where it should apply.  Id. at 407-09; Wiggins v. Smith, 539 U.S. 510, 520 (2003); Clark, 331 F.3d at 1067.   "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . . [A]n *unreasonable* application of federal law is different from an *incorrect* or *erroneous* application of federal law."  Williams, 529 U.S. at 409, 412; Lockyer, 538 U.S. at 75; Wiggins, 539 U.S. at 520; Clark, 331 F.3d. at 1067-68.   Thus, a federal court may not issue a writ even when it concludes, based on its independent judgment, that the state court, in reaching its decision, applied clearly established federal law erroneously or incorrectly.  Williams, 529 U.S. at 412-13; Lockyer, 538 U.S. at 76; Woodford v. Visciotti, 537 U.S. 19, 24, 27 (2002), reh'g denied, 537 U.S. 1149 (2003).  At a minimum, the objectively unreasonable standard denotes a great degree of deference to the state court.  Clark, 331 F.3d at 1068.

"'[T]he only question that matters under § 2254(d)(1),' Lockyer, 123 S. Ct. at 1171, is whether or not the [] state court's decision is contrary to, or involved an unreasonable application of, clearly established Federal law."  Id. at 1069.

Under section 2254(d)(2), a state prisoner may obtain federal habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Factual determinations by state courts are presumed correct in the absence of convincing evidence to the contrary.  Miller-El, 537 U.S. at 340.  "A state court decision 'based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding.'"  Davis, 384 F.3d at 638 (quoting Miller-El, 537 U.S. at 340).

Findings and Recommendation - 4

In this case, petitioner argues that this Court is required to perform an independent review to ensure meaningful application of section 2254(d)(1) because, on direct appeal, the state Court of Appeals and Supreme Court failed to provide a clear statement of the basis for its decisions and, although the state post-conviction court issued findings of fact and conclusions of law, such findings were drafted by an interested party, and the findings failed to advance any legal reasoning for the post-conviction court's rejection of his contentions of error relating to the determination that he was competent.

Here, petitioner raised the issue of his fitness to proceed on direct appeal, and the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. The post-conviction relief court denied relief.[1] The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review.

When the state court does not give reasoning for its decision, the habeas court must conduct an independent review of the complete record and applicable law. Such independent review is not de novo review, but is required to determine whether the state court clearly erred in its application

---

[1] The post-conviction court made the following relevant findings of fact:
    14. Petitioner challenged the court's findings that he was able to aid and assist in his own defense on direct appeal.
    15. Petitioner was evaluated for his ability to aid and assist in his own defense prior to trial and his fitness was litigated prior to trial.
(Ex. 123 at 5.) The post-conviction court made the following relevant conclusions of law:
    2. Petitioner failed to meet his burden of proof of [sic] any of the claims of his petition.
    3. Those issues which were or which could have been raised on direct appeal cannot be grounds for post-conviction relief.
. . . .
    5. None of petitioner's rights under the Oregon or United States Constitutions were violated in the underlying criminal proceeding such that petitioner is entitled to post-conviction relief.
(Ex. 123 at 5-6.)

Findings and Recommendation - 5

of controlling federal law. Delgado v. Lewis, 223 F.3d 976, 981-82 (9th Cir. 2000); Greene v. Lambert, 288 F.3d 1081, 1089 (9th Cir. 2002). An independent review of the record is the only means for the court to determine whether the state court's decision was objectively reasonable. Delgado, 223 F.3d at 982; Greene, 288 F.3d at 1088. And when the court's independent review of the record demonstrates that the findings are supported by the record, the fact that the state post-conviction court had the state draft the findings and conclusions does not preclude the habeas court from affording the findings deference. Correll v. Thompson, 63 F.3d 1279, 1293 n.11 (4th Cir. 1995). Accordingly, the Court will conduct an independent review of the record before it to determine whether the state courts' decisions were objectively unreasonable.

Under Supreme Court precedent, "It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to trial." Drope v. Missouri, 420 U.S. 162, 171 (1975); Pate v. Robinson, 383 U.S. 375, 378 (1966); Medina v. California, 505 U.S. 437, 439 (1992). Addressing the issue of a criminal defendant's competency to stand trial, the Supreme Court has held that, "the test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam) (internal quotations omitted); Drope, 420 U.S. at 172.[2]

---

[2] ORS 161.360, the Oregon statute relating to competency of a defendant to stand trial, provides in pertinent part:
    (2) A defendant may be found incapacitated if, as a result of a mental disease or defect, the defendant is unable:
        (a) To understand the nature of the proceedings against the defendant; or

Findings and Recommendation - 6

The parties agree that the foregoing was the clearly established Supreme Court precedent at the time that hearings on petitioner's competency were held, in July 1992 through February 1993.[3]

The record indicates that on July 20, 1992, defendant filed a "Motion for Hearing to Determine Fitness to Proceed." (Ex. 118.) A competency hearing was held on July 23, 1992. (Part A Vol. I, Tr. at 11-71.) Defense called Dr. Edward Michael Colbach, M.D., to testify. (Part A Vol. I, Tr. at 17-27.) Dr. Colbach had conducted psychological testing and performed a clinical interview with petitioner, talking to him for "Probably three" hours. (Part A Vol. I, Tr. at 19, 22.) He had reviewed Dr. Goldmann's report and talked to him personally. (Part A Vol. I, Tr. at 22-23.) He thought that "Overall," petitioner was able to aid and assist in the defense of his case. (Part A Vol. I, Tr. at 17.) Dr. Colbach testified that he did not think petitioner was malingering. (Part A Vol. I, Tr. at 18-19.) He testified that petitioner had the classic disordered thinking seen in schizophrenia. (Part A Vol. I, Tr. at 19-20.) Dr. Colbach answered, "Yes," to questions asking whether petitioner: understood he was facing trial for murdering Adrienne Thomas; acknowledged that he, in fact, killed

---

      (b) To assist and cooperate with the counsel of the defendant; or
      (c) To participate in the defense of the defendant.

The statute also provides that the court may order an examination of defendant if it has reason to doubt the defendant's fitness to proceed to trial by reason of incapacity. ORS 161.360(1). ORS 161.365(1) provides in pertinent part that the court may call any witness and may appoint a psychiatrist or psychologist to examine defendant to assist it in reaching its decision, and may order that defendant be committed to a state mental hospital. ORS 161.370 provides that the issue of defendant's fitness to proceed shall be determined by the court and, if neither prosecuting or defense counsel contest the report filed by the psychiatrist or psychologist report filed pursuant to ORS 161.365, the court may make its determination on the basis of the report; or, if the finding is contested, the court shall hold a hearing and the party may cross-examine and offer evidence on the issue. ORS 161.370(1).

[3] Competency hearings were held on July 23, 1992, (Part A Vol. I, Tr. at 11-71); September 9, 1992, (Part A Vol. I, Tr. at 72-178); and February 5, 1993, (Part A Vol. IIB, Tr. at 1-50).

Findings and Recommendation - 7

her; understood that he had been assigned two individuals to assist in defending him; understood the role of the prosecution; understood that there would be witnesses who would be called to testify about what happened; understood that he had the ability to call witnesses; understood the role of the judge; understood that a group of people identified as a jury would hear the case; understood that the penalty was death in his case; and that there are lessor offenses that might apply and defenses that apply. (Part A Vol. I, Tr. at 23-24.) He answered "Yes" to questions that petitioner had been cooperative with him, and that petitioner was able to participate in evaluating his mental state by cooperating with Dr. Colbach to the best of his ability. (Part A Vol. I, Tr. at 24-25.) The court reviewed the criteria of the relevant statute, and Dr. Colbach testified that petitioner understood the nature of the proceedings against him; that petitioner could generally assist and cooperate with his counsel; and that petitioner generally could participate in his defense. (Part A Vol. I, Tr. 25-26.) Dr. Colbach's report was available to the court. (Part A Vol. I, Tr. at 15; Ex. 102 App. 5.)

Dr. Leslie Goldmann, Ph.D., a clinical psychologist, testified at the hearing. (Part A Vol. I, Tr. at 37-53; Ex. 102 App. 4.) Dr. Goldmann interviewed petitioner for about ten hours for the purpose of psychological testing. His diagnosis was schizophrenia. (Part A Vol. I, Tr. at 37.) He testified that petitioner had loose associations and was very illogical. (Part A Vol. I, Tr. at 39-40.) Dr. Goldmann did not think petitioner was malingering. (Part A Vol. I, Tr. at 43, 50.) He testified that he was uncertain whether petitioner was able to assist; he thought petitioner could participate but that it was debatable whether he could fully understand. (Part A Vol. I, Tr. at 44-45, 46.) Dr. Goldmann responded in the affirmative to questions asking whether petitioner: had an awareness of what he was charged with, the role that his counsel play, and the role that the prosecutors play; understood that there would be witnesses called and that he could call witnesses; understood that

Findings and Recommendation - 8

there would be jurors who would be required to make a decision about him; and that the judge would play a role in determining what evidence was admissible and the general conduct of the trial. (Part A Vol. I, Tr. at 47.) Dr. Goldmann's report was available to the court. (Part A Vol. I, Tr. at 15; Ex. 102 App. 4.)

The court continued the matter to allow time to see whether medication would help petitioner. (Part A Vol. I, Tr. at 54-66.)

A second competency hearing was held on September 9, 1992. (Part A Vol. I, Tr. at 72-178.) Dr. Goldmann testified that he had seen petitioner for an additional hour before he was given Haldol, and for about forty minutes a few weeks later. (Part A Vol. I Tr. at 119-43.) Dr. Goldmann testified that petitioner could not aid his lawyers in having a meaningful relationship with them in terms of the trial and, therefore, petitioner was not able to aid and assist. (Part A Vol. I, Tr. at 130.) Dr. Colbach also testified. (Part A Vol. I, Tr. at 144-66.) Changing his opinion as stated at the first hearing, Dr. Colbach testified that petitioner was not able to aid and assist his attorneys in defending him. (Part A. Vol. I, Tr. at 144.) Petitioner's counsel responded to the court's questions as to what specifically bothered counsel in defending petitioner, and what it was that petitioner couldn't do that counsel needed to give petitioner a fair trial. (Part A. Vol. I, Tr. at 167-71.)

Following the hearing, the court ordered on September 10, 1992, that petitioner be placed in custody of the Oregon State Hospital for competency evaluation for as long as necessary but not more than sixty days. (Ex. 102 App. 7; Ex. 119.) Petitioner was admitted to the Oregon State Hospital on September 14, 1992, and discharged on October 27, 1992. (Ex. 103 Report p. 1[4]; Part

---

[4] The State's motion to supplement the record on direct appeal with Dr. Hulteng's report was granted. (Ex. 103, 104.)

A Vol. IIB, Tr. at 7.) Petitioner's trial attorneys filed with the trial court on February 3, 1993, a "Memorandum of Law on Competency to Proceed." (Ex. 102 App. 3; Ex. 120.) In the memorandum, counsel stated in pertinent part in discussing the standards under ORS 161.360: "Defense counsel have repeatedly asserted that the defendant does not truly understand the nature of the proceedings, although he can parrot back what a prosecutor, a judge, and a jury are. We have also repeatedly said we do not believe that Mr. Lounsbury can aid and assist us." (Ex. 102 App. 3-3.) In the conclusion, counsel stated in pertinent part:

> Both defense lawyers believe that the defendant is not competent to proceed. The state does not appear to question defense counsel's good faith, nor our competence as counsel. To put the matter bluntly, when skilled defense counsel, in good faith, tell the court that they are not being aided and assisted by their client, that should be the end of the matter. In this case, there is powerful corroborating evidence that the defendant is not able to proceed to trial.

(Ex. 102 App. 3-9.)

On February 5, 1993, a third competency hearing was held. (Part A Vol. IIB, Tr. at 1-50.) Richard J. Hulteng, Ph.D., a psychologist, who evaluated petitioner while he was admitted at the Oregon State Hospital, testified at the hearing. (Part A Vol. IIB, Tr. at 6-29.) He had been involved in roughly 150 evaluations for competency to proceed to trial, testifying approximately thirty times. (Part A Vol. IIB, Tr. at 20, 22.) He diagnosed petitioner as malingering. (Part A Vol. IIB, Tr. at 6.) He testified that the initial symptoms reported to him were similar to those reported to Dr. Goldmann and Dr. Colbach,[5] but that petitioner had "backed off" much of the symptoms reported as delusional. (Part A Vol. IIB, Tr. at 23-24.) Upon a request for clarification by the court, Dr. Hulteng testified that, even if petitioner was continuing to experience some psychotic symptoms, he had sufficient

---

[5] Dr. Hulteng had transcripts of the testimony by Dr. Goldmann and Dr. Colbach. (Part A Vol. IIB, Tr. at 9.)

Findings and Recommendation - 10

control over his symptoms that he could deny them, and he could control how he was presenting himself. (Part A Vol. IIB, Tr. at 23-25.) In his report filed with the court, (Part A Vol. IIB, Tr. at 6; Ex. 103), Dr. Hulteng indicated that he had interviewed petitioner for ten hours on seven occasions, and on a later occasion for three hours. (Ex. 103 Report p. 1.) His Axis I diagnosis was malingering; and his Axis II diagnosis was personality disorder, not otherwise specified, with sadistic, antisocial, and schizotypal features. (Ex. 103 Report p. 14.) Dr. Hulteng stated in his summary and conclusions:

> The defendant appears to be a severely character disordered individual, with a likely history of substance abuse. While he currently reports a variety of psychotic symptoms, it appears most likely that these are malingered. With respect to the issue of competency to stand trial, the defendant does not appear to suffer from a mental disease or defect which would render him unable to aid and assist in his defense. In addition, even if it were assumed that the defendant was mentally ill, he appears capable of understanding the nature of the proceedings against him, assisting and cooperating with counsel, and participating rationally in his defense. Accordingly, it is recommended that he be found competent to stand trial.

(Ex. 103 Report p. 15.)

At the conclusion of all testimony and arguments of defense counsel and the State, the court stated:

> Thank you all.
> This hearing concludes a rather lengthy and extensive inquiry into the mental state of this defendant, specifically as to whether or not he is competent to aid and assist his counsel in the defense of the charges brought against him.
> In preparation of the hearing this morning, I went back and reviewed my notes regarding the testimony of Dr. Colbach and Dr. Goldmann at the first session, and I think that one of the recollections I have of listening and watching the testimony of Dr. Colbach at that time was his cautious approach to this problem.
> I think all of us in the criminal justice system appreciate the contribution that Dr. Colbach has made, and I think we all regard his views as very significant. But my feeling, as the factfinder, as I listened to Dr. Colbach was that he was making a considered judgment, that it was a close call for him. That's my own interpretation of how he approached this problem.

> I compare his approach and presentation with that of Dr. Hulteng. He has spent 13 hours, as I recall, in interview sessions with this defendant. I believe that he noted that he had made interviews with him on eight different sessions. He's reviewed a large mass of data, factual, medical, which was provided to him by both the defense and the prosecutors. He has written a report that is 15 pages single spaced.
>
> I think what's most significant, or one of the many significant factors, in Dr. Hulteng's evaluation is that the person who presented himself to Dr. Hulteng on some of the interviews was not exhibiting the same symptoms, personality characteristics, that either Dr. Goldmann or Dr. Colbach noted. This backing away syndrome that he detected and mentioned this morning and in his report seems to be of great significance to Dr. Hulteng, and it makes sense to me as the lay person.
>
> So I conclude that on the issue of this man, this defendant's competency, that he does not suffer from mental disease or defect which would render him unable to assist and aid his counsel in the defense of his case. I find that he is capable of understanding the nature of the proceedings against him and assisting and cooperating with his counsel and participating rationally in his defense.
>
> Those are my findings and conclusions.
>
> . . . .

(Part A. Vol. IIB, Tr. at 48-50.)

The Court finds that adequate proof of petitioner's competency to stand trial was addressed. The trial court made its determination based on all the evidence before it on the issue of whether petitioner was competent to proceed to trial. The court had the reports of Dr. Colbach and Dr. Goldmann and heard testimony from them at two competency hearings, and from other witnesses. The court noted Dr. Colbach's cautious approach to the problem, and found that it was a close call for Dr. Colbach. The court had the report and heard the testimony of Dr. Hulteng, who evaluated petitioner while he was admitted to Oregon State Hospital. The court noted that Dr. Hulteng had spent thirteen hours in interviews with petitioner in eight sessions. In making its determination, the court found that petitioner's "backing away" from symptoms presented to Dr. Goldmann and Dr.

Colbach was significant to Dr. Hulteng's evaluation of petitioner.[6] It was for the trial court, as fact finder, to evaluate the credibility of the witnesses who testified. See <u>Maggio v. Fulford</u>, 462 U.S. 111, 117-18 (1983) (per curiam); <u>Demosthenes v. Baal</u>, 495 U.S. 731, 735 (1990) (per curiam). Petitioner has not rebutted any findings of fact made by the state court by clear and convincing evidence, as required by 28 U.S.C. § 2254(e)(1), and these findings are presumed correct.

Considering the opinions of qualified medical professionals, the trial court addressed the requisite standard to comply with due process in making its determination of fitness to proceed, finding specifically that petitioner did not suffer from mental disease or defect which rendered him unable to assist and aid his counsel in the defense of his case; and that petitioner was capable of understanding the nature of the proceedings against him and assisting and cooperating with his counsel, and participating rationally in his defense. See <u>Dusky</u>, 362 U.S. at 402; <u>Drope</u>, 420 U.S. at 171-72*; <u>Pate</u>, 383 U.S. at 378; <u>Medina</u>, 505 U.S. at 439. The Court finds on this record that petitioner's due process entitlements were addressed by the state courts and protected. The state courts' determination of petitioner's competence to stand trial was not objectively unreasonable. The Court finds that the state courts' decisions were neither contrary to, nor involved an unreasonable application of, clearly established federal law. Accordingly, petitioner is not entitled to relief on his claim that he was denied due process when the trial court found him competent to stand trial.

<u>Evidentiary hearing</u>

Petitioner contends that, because the evidence of record does not support a determination that he was more likely than not competent, an evidentiary hearing should be held for the purpose of

---

[6] The Court notes that, in his argument that his due process rights were violated by the trial court's decision that he was fit to proceed, petitioner addresses only the opinions of Dr. Colbach and Dr. Goldman, and makes no mention of Dr. Hulteng's evaluation.

Findings and Recommendation - 13

determining whether a retrospective competency decision can be made. Respondent contends that petitioner is not entitled to an evidentiary hearing. However, because the Court has found that the state court's competency determination was not contrary to, or an unreasonable application of, federal law, it is not necessary for the Court to address this argument.

## II. RECOMMENDATION

Based upon the foregoing, it is recommended that the petition for writ of habeas corpus be denied and this case dismissed; and that judgment be entered denying the petition for writ of habeas corpus and dismissing this case with prejudice.

*__This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals__*. **Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.** *__The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have ten days within which to file a response to the objections__*. **Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.**

DATED this __1___ day of November, 2004.

_____/s/_____
UNITED STATES MAGISTRATE JUDGE